IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT J.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   24-cv-6865** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                              **February 6, 2026**

Plaintiff Scott J. brought this action seeking review of the Commissioner of the Social Security Administration's (SSA) decision denying his claim for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433. This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 16) is **DENIED.**

## I.      PROCEDURAL HISTORY

Plaintiff protectively filed for SSDI on October 24, 2021, alleging disability since November 17, 2017, due to small fiber neuropathy, fibromyalgia, pain, muscle spasms and brain fog.  (R. 213).  The application was denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 72-76, 82-88). Plaintiff, represented by counsel, and a vocational expert (VE) testified at an administrative hearing on April 8, 2024.  (R. 27-52).  On April 18, 2024, the ALJ issued a decision unfavorable to Plaintiff.  (R. 11-26).  Plaintiff appealed, and the Appeals Council denied his request for review on October 29, 2024, making the ALJ's decision the final decision of the Commissioner

for purposes of judicial review.  (R. 1-6).

On December 30, 2024, Plaintiff filed a complaint in this Court.  (Compl., ECF No. 1).  On February 13, 2025, he consented to my jurisdiction pursuant to 28 U.S.C. § 636(C).  (Consent, ECF No. 8).  On July 1, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 16).  The Commissioner filed a Response on November 4, 2025.  (Resp., ECF No. 19).

## II.     FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on August 25, 1967, and was 50 years old on the alleged disability onset date.  (R. 256).  He completed a four-year college.  (R. 214).  Plaintiff previously worked as an automotive production supervisor and a dog walker.  (*Id.*).

### A.     Medical Evidence

Plaintiff first developed fatigue[1] in 2015, without any obvious precipitating event.  (R. 359).  Since that time, he has fairly consistently complained to his medical providers about this problem.  (*See* R. 360, 367, 374, 462, 464, 490, 501, 509, 590, 602, 609, 767, 838, 881, 886.  *But see* R. 426, 575, 580 (denying fatigue during these visits)).  Due to Plaintiff's fatigue, his treatment has included educating him regarding the need to pace himself while performing activities.  (*See, e.g.,* R. 459, 470, 496, 509).

Since his alleged disability onset, Plaintiff has also experienced significant involuntary weight loss, which he suggests may be associated with problems eating.  On November 18, 2017,

---

[1] Plaintiff's medical records sometimes couple his fatigue with malaise (i.e., "malaise/fatigue").  (*See* R. 524, 577, 584, 590, 602, 609, 881, 886).

Plaintiff weighed 227 pounds (down from 260 on December 21, 2016). (R. 595, 611). By March 1, 2019, his weight had fallen to 225 pounds, and he complained of a "sensation of something stuck in his throat." (R. 303). On June 7, 2021, he weighed 191 pounds. (R. 448). He lost nine more pounds by the time of a March 28, 2022 appointment. (R. 792). On May 4, 2023, Plaintiff told his primary care physician, Louise Butler, M.D., that he often does not finish his meals because he gets tired while chewing. (R. 920). By December 6, 2023, Plaintiff weighed 159 pounds. (R. 871).

Additionally, during the relevant period Plaintiff has reported pain and stiffness, often associated with movement. (*See, e.g.*, R. 590 (May 18, 2018: "I feel like the tin man getting up and moving.")). A March 25, 2019 CT scan showed mild to moderate spondylosis of the cervical spine. (R. 394). On June 7, 2021, it was noted that an MRI showed mild to moderate spondylosis in his lumbar spine. (R. 450). In response to worsening neck pain and upper extremity weakness, on August 2, 2023, Plaintiff underwent a cervical spine MRI, which showed mild to moderate degenerative changes mildly progressed since 2020. (R. 552, 862, 920). On November 6, 2023, Plaintiff complained of "[g]eneralized achiness in his neck and low back," as well as "[g]eneralized upper as well as lower extremity numbness paresthesia and weakness." (R. 849). A lumbar spine MRI taken that day showed "evidence of advanced disc degeneration especially L5-S1 and to a less[er] degree L4-L5." (R. 860). At various points, Plaintiff has also complained of pain in various other joints and body parts, including his chest, shoulders, arms, elbows, hands, ribs, abdomen, hips, thighs, knees and feet. (*See, e.g.*, R. 360, 374, 447, 460, 530).

Plaintiff was diagnosed by his rheumatologist with fibromyalgia in 2020. (R. 462). At an October 13, 2021 visit with Kristine Vanselow, M.D., Plaintiff reported a "widespread itching sensation," a sensation of being "squeezed," and "ongoing, uncontrolled pain" that the doctor

3

noted appeared "related to fibromyalgia," with symptoms worse at night especially following daytime activity.  (R. 527; *see also* R. 438 (complaining on May 3, 2021 of "full body pain")).  Dr. Vanselow observed that "multiple medications including amitriptyline, duloxetine, savella [and] effexor have been tried without relief" and suggested gabapentin and lyrica, but Plaintiff stated his belief that they had been attempted as well.  (*Id.*).  She referred him to the fibromyalgia clinic.  (*Id.*).  At the November 19, 2021 outpatient evaluation, he reported tenderness all over his body (but primarily in the neck and back), and his Revised Fibromyalgia Impact Questionnaire Score placed him in the "severe" range.  (R. 464).  Plaintiff's treatment plan consisted of approximately 15 sessions of physical therapy consisting of, *inter alia*, breathing/relaxation techniques, stretching and range of movement improvement, body strengthening, aerobics, aquatics, manual therapy, neuromuscular re-education, a peripheral nerve evaluation, posture and body mechanics training and patient education about the condition.  (R. 465).  One month later, it was noted that Plaintiff's symptoms remained "at baseline."  (R. 521).  On March 28, 2022, Dr. Vanselow noted that Plaintiff's worsening symptoms could not be fully explained by his fibromyalgia and small fiber neuropathy diagnoses alone.  (R. 790).  She also recorded that after initial visits at the fibromyalgia clinic Plaintiff did not return because his pain worsened and he felt that "they didn't listen to him . . . ."  (*Id.*).

Despite these issues, Plaintiff has had largely normal physical and mental examination results, including full motor function, normal gait, coherent thought processes, normal thought content, cooperative demeanor, and normal mood and affect.  (*See, e.g.,* R. 303, 307-08, 312-13, 316-17, 319-20, 322-23, 382-83, 386-87, 400-01, 427, 522, 528-29, 540, 546, 548-49).

On May 26, 2022, consultative examiner Gregory Coleman, Psy.D., conducted a mental status evaluation of Plaintiff.  (R. 806-18).  Upon examination, he was irritable but otherwise cooperative and normal, with coherent and goal-directed thought processes, good insight and

4

judgment, and intact attention, concentration, and memory.  (R. 808).  His activities of daily living (ADLs) included personal care, cooking and preparing food, cleaning, doing laundry, shopping, managing money, driving (although limited due to pain), taking public transportation, socializing with family daily and friends and neighbors regularly, watching television, listening to music, using social media, playing video games and dog-walking.  (R. 809).  He was recommended for psychological therapy and vocation training and assessed with a good prognosis, provided that he followed through with treatment and found "suitable full-time employment" following completion of training.  (*Id.*).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Coleman opined that Plaintiff had no limitations in understanding or remembering simple or complex instructions, carrying out simple ones, or making simple work-related decisions; mild limitations in carrying out complex instructions, making judgments on complex decisions or interacting with others; and moderate limitations in responding appropriately to usual work situations and changes in a routine work setting.  (R. 810-11).  Dr. Coleman further determined that Plaintiff's abilities to concentrate, persist or maintain pace and adapt or manage himself were not affected by his impairments.  (R. 811).

On this same date, consultative examiner Ziba Monfared, M.D., also conducted an Internal Medicine Examination of Plaintiff.  (R. 819-22).  Plaintiff complained to Dr. Monfared that his pain, rated six or seven on a scale of 10 and sometimes worsening at night, traveled from his neck through the rest of his body.  (R. 819).  Reported ADLs again included driving, cooking, cleaning, laundry, shopping, childcare, personal care, watching television, listening to the radio, using social media and playing video games.  (R. 820).  Upon examination, Plaintiff was in no acute distress, demonstrated normal gait and stance without the need for an assistive device, walked on heels and toes without difficulty, squatted 80 percent, and maneuvered himself

5

through the examination on his own.  (*Id.*).  Reviews of his musculoskeletal system and extremities were also normal, and he exhibited full grip strength bilaterally without any limitation in dexterity or grasping objects.  (R. 821).  His prognosis was assessed as good.  (R. 822).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Monfared opined that Plaintiff could continuously lift and carry up to 100 pounds, use his hands and feet bilaterally, and perform all postural maneuvers; sit, stand and walk for eight hours at a time or in a workday; ambulate without a cane; and carry out all activities listed on the form.  (R. 825-30).  Plaintiff also demonstrated normal range of motion in all joints.  (R. 832-35).

On June 3, 2022, State agency psychological consultant Richard Williams, Ph.D., opined that Plaintiff had no limitations in adapting or managing himself and in understanding, remembering, or applying information and mild limitations in interacting with others and concentrating, persisting, or maintaining pace.  (R. 58).  Upon reconsideration on November 15, 2022, State agency psychological consultant Douglas Schiller, Ph.D., opined that Plaintiff had mild limitations in all four areas of mental functioning.  (R. 67).

On July 21, 2022, State agency medical consultant Josie Mae Henderson, M.D., opined that Plaintiff could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; push and pull without additional limitations; stand and/or walk and sit for six hours each in an eight-hour workday; occasionally climb ladders, ropes, or scaffolds; and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (R. 60).  Upon reconsideration on November 28, 2022, State agency medical consultant Charles Joseph Hubbard, Jr., M.D., opined that Plaintiff had no exertional or postural limitations.  (R. 68).

On October 6, 2023, it was noted that based on any antibody test Plaintiff had recently

been diagnosed with Sjogren's syndrome,[2] with unspecified organ involvement.  (R. 865, 869, 917).  Plaintiff was prescribed Duexis to assist with his joint pain and inflammation caused by the condition.  (R. 917).  On November 10, 2023, he expressed concerns to Dr. Butler that the syndrome could affect his heart rate, although he denied noticing any irregularities at that time.  (R. 914).  On February 16, 2024, he returned for a follow up with no specific action taken or recommended regarding his Sjogren's syndrome.  (R. 913).

### B.    Nonmedical Evidence

The record also contains non-medical evidence.  On February 5, 2022, Plaintiff's wife completed an Adult Function Report on his behalf in which she wrote that he suffers from stiffness and pain throughout his body, especially with activities such as sleeping, walking, and driving.  (R. 240).  She indicated that Plaintiff's pain impacts his ability to focus or lie down for more than four hours.  (R. 240-41).  She described Plaintiff's typical day as waking, stretching, feeding and walking the dogs, driving his daughter to school, performing some unspecified "work,"[3] napping, running errands, working more, attending appointments, possibly napping, and picking up his daughter from school.  (R. 241).  She reported that Plaintiff has pain with

---

[2]  Per the regulations:

> Sjogren's syndrome is an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.00D7(a)(i).

[3]  Plaintiff's wife may have been referring to his dog-walking work that did not rise to the level of substantial gainful activity.  (R. 17).

7

personal care but can do it without assistance.  (*Id.*).  Plaintiff also prepares his own meals, does laundry, vacuums, washes dishes, mows and cleans up the yard, shops (mostly online but also in stores sometimes), manages money, watches television, plays with his dogs, and socializes with others (including monthly visits to family).  (R. 242-44).  His wife checked boxes indicating that Plaintiff has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions and using his hands.  (R. 244-45).  She predicted that Plaintiff could walk for 20 minutes at a time.  (R. 245).  She added that he can generally follow spoken instructions but must read written ones twice and that he has "no attention span," does not finish what he starts, and struggles with changes to his routine.  (R. 245-46).  Plaintiff's wife further indicated that he wears a wrist brace.  (R. 246).

On October 23, 2022, Plaintiff's wife completed a second Adult Function Report that largely tracked the earlier one, although she now endorsed additional impairments and limitations.  (R. 258-65).  She noted that Plaintiff does not sleep more than four hours at a time, suffers from brain fog, lacks a short-term memory and experiences spasms that cause him to drop things.  (R. 258).  She claimed that he had stopped mowing the yard, working outside, socializing with non-family and getting along with others and that due to brain fog he could no longer manage money.  (R. 260-63).  Additionally, she claimed that Plaintiff required a cane when walking on uneven ground.  (R. 264).

At the April 8, 2024 administrative hearing, Plaintiff testified that he has diagnoses for Lyme disease, Epstein-Barr virus, fibromyalgia, small fiber neuropathy and Sjogren's syndrome.  (R. 41).  He indicated that he is unable to grip fully, that he lacks balance due to his neuropathy and that due to his conditions he has lost 100 pounds from his prior high of 260 or 270 pounds.  (R. 42, 45).  In a typical day, he goes to bed around 1 a.m., sleeps for approximately four hours

8

before getting up due to tightness, stretches for up to 30 minutes, feeds his dogs and lets them out, does more stretches while showering, makes breakfast, watches television, uses a heating pad and TENS unit, naps, goes to appointments as needed, walks his dogs again, helps to cook dinner, washes dishes, vacuums, mows the lawn (which must now be broken up over two days), and takes a bath.  (R. 44-45).  He also drives his daughter to and from school but only drives within 10 minutes of his home due to spasms and pain, which he assessed as "at least seven or eight . . . ."  (R. 32-33, 45).  Plaintiff claimed he can only sit for approximately 20 minutes before having to move.  (R. 44).  He stated that his resting muscle tension is "through the roof" and that his pain makes it difficult to pay attention and concentrate, which he believed would prevent him from working full-time.  (R. 45-46).  According to Plaintiff, he has "tried everything [he] can," but his symptoms have persisted.  (R. 46).

## III.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step

whether, despite the severe impairment, the claimant has the residual functional capacity [RFC] to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy.  *See, e.g.*, *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *See, e.g.*, *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it.  *See, e.g.*, *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The Court exercises plenary review over legal issues.  *See, e.g.*, *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.    ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which he made the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act

on September 30, 2023.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 17, 2017 through his date last insured of September 30, 2023 (20 CFR 404.1571 *et seq*.).

3.    Through the date last insured, the claimant had the following severe impairments: peripheral neuropathy; Sjogren's syndrome; fibromyalgia; and degenerative disc disease of the cervical spine (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can tolerate frequent exposure to unprotected heights, extreme cold, extreme heat and vibrations.  He can frequently operate hazardous machinery.

6.    Through the date last insured, the claimant was capable of performing past relevant work as a packaging supervisor, DOT# 920.132-010, light as generally performed and medium as actually performed, SVP 6; production supervisor, DOT# 699.130-010, light as generally and actually performed, SVP 7; plant manager, DOT# 183.117-010, sedentary as generally performed and medium as actually performed, SVP 8; and supervisor, motorcycle, DOT# 806.131-014, light as generally and actually performed, SVP 8. This work did not require the performance of work-related activities precluded by the claimant's residual

11

functional capacity (20 CFR 404.1565).

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from November 17, 2017, the alleged onset date, through September 30, 2023, the date last insured (20 CFR 404.1520(f)).

(R. 14-22).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 22).


## V.    DISCUSSION

In his request for review, Plaintiff raises three issues:

> 1. Whether the Administrative Law Judge erred by failing to properly analyze or consider whether the claimant met or equaled a medical listing for Sjorgren's [sic] Syndrome?
>
> 2. Whether the Administrative Law Judge erred by failing to properly analyze or consider whether the claimant met or equaled a medical listing for fibromyalgia?
>
> 3. Whether substantial evidence existed to support the Administrative Law Judge's finding that the claimant could perform work at a medium exertional level?

(Pl.'s Br., ECF No. 16, at 10 (capitalization omitted)).

### A.    The Medical Listings at Step Three

At step three, the ALJ analyzes whether a claimant's impairments or combination of impairments meet or medically equal one of the listings that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity.  20 C.F.R. § 404.1525(a). This inquiry functions to identify those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background, making further inquiry unnecessary.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  The claimant bears the burden of producing medical findings showing her impairments meet or medically equal a listed impairment.  *See Burnett*, 220 F.3d at 120 n.2.  To meet this burden, the claimant must establish

12

all the requirements of the relevant listing. *Sullivan*, 493 U.S. at 530 (claimant who meets only some of the listing requirements, "no matter how severely, does not qualify"); *see also Hartung v. Colvin*, No. 12-6155, 2016 WL 2910096, at *5 (E.D. Pa. May 19, 2016). Meeting a listing cannot be based on diagnoses alone. 20 C.F.R. §§ 404.1525(d). Because matching or equaling a listing at step three results in an automatic finding of disability, the listings are strictly construed against claimants. *See Sullivan*, 493 U.S. at 530-32.

### 1. Sjogren's Syndrome

As both parties note, to meet or equal the listing for Sjogren's syndrome (Listing 14.10) Plaintiff must show that it involves at least two organs/body systems with: (1) one involved to a moderate or greater degree; and (2) two or more constitutional symptoms or signs (i.e., severe fatigue, fever, malaise or involuntary weight loss). 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.10A(1)-(2). Alternatively, he must show "[r]epeated manifestations" of the condition, at least two of the constitutional symptoms or signs, and marked limitations in: (1) ADLs; (2) maintaining social functioning; or (3) timely completing tasks because of deficiencies in concentration, persistence, or pace. *Id.* pt. 404, subpt. P, app. 1, § 14.10B(1)-(3).

According to Plaintiff, he has fulfilled this duty because the record shows that he consistently "complained for years" about coughing and difficulty swallowing and, moreover, experienced problems regarding "his hands and knees locking up," fatigue, malaise, and involuntary weight loss of more than 100 pounds since the onset of this condition. (Pl.'s Br., ECF No. 16, at 11 (citing SSR 16-3p)). However, the Commissioner counters that the record contains hardly any evidence of Sjogren's syndrome beyond a few passing references to a diagnosis and a follow up and certainly nothing constituting "repeated manifestations." (Resp., ECF No. 19, at 7). He continues that, in fact, Plaintiff denied many of the constitutional markers described in the listing and, even when such problems as fatigue were noted, no indication exists

that they were repeatedly "severe" as defined by the relevant regulations. (*Id.* at 7 & n.3 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.00(C)(12))). Moreover, he points out that the ALJ's discussion of Plaintiff's ADLs reflects that they were not "markedly" restricted and highlights the ALJ's finding that Plaintiff had only mild limitations in interacting with others and concentrating, persisting, or maintaining pace. (*Id.* at 7).

The Commissioner continues that Plaintiff may have preferred a more granular analysis of the listing but adds that the ALJ was not required to use any particular language in constructing a decision that sufficiently develops the record to permit meaningful judicial review. (*Id.* at 7-8 (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))). He maintains that under applicable case law the ALJ was instead permitted to fulfill this duty through a discussion of the medical record following his conclusion that Plaintiff's impairments did not meet or equal a listing, without tailoring this discussion to the one for Sjogren's syndrome. (*Id.* at 8 (citing *Rembert v. Comm'r of Soc. Sec.*, 142 F. App'x 570, 572 (3d Cir. 2005))). He emphasizes that the ALJ reiterated throughout the decision that Plaintiff's examinations were largely benign, that his treatment was conservative without the need for injections or surgeries, that he engaged in a variety of ADLs, and that all record opinions found that his impairments were not fully work-preclusive. (*Id.*). The Commissioner contrasts the ALJ's analysis backed by substantial evidence with Plaintiff's summary conclusions, unsupported arguments and failure to cite to the records that purportedly establish his contentions. (*Id.* (citing *Atkins v. Comm'r of Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020))). He therefore asks the Court to reject Plaintiff's undeveloped assertions and affirm the ALJ's step three finding regarding Plaintiff's Sjogren's syndrome. (*Id.*).

The Commissioner is correct that Plaintiff has failed to adequately develop his contentions. *See Groff v. Kijakazi*, No. 20-cv-06040-RAL, 2022 WL 17083647, at *5 (E.D. Pa.

14

Nov. 17, 2022) ("It is necessary to demonstrate, not just assert, that the ALJ erred. Demonstration calls for careful citation to the evidence, not just a conclusory assertion that leaves the judge to search through 1,000 pages of records to see if the assertion is so.") (citing *United States v. Shulick*, 18 F.4th 91, 113 (3d Cir. 2021)).  Although he catalogues several ailments that he attributes to his Sjogren's syndrome and posits that "the record" at large "clearly" meets or exceeds Listing 14.10, (Pl.'s Br., ECF No. 19, at 7), he makes no attempt to explain how the specific criteria listed in either subsection "A" or "B" have been fulfilled.  For instance, as a threshold matter subsection "A" requires "involvement of two or more organs/body systems," 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.10A, but Plaintiff identifies none.  Indeed, it is doubtful that he could carry this burden because his Sjogren's syndrome diagnosis was "with *unspecified* organ involvement."  (R. 869, 905 (emphasis added)).  Moreover, given his failure to name the affected organs or body systems, Plaintiff also necessarily does not explain how at least one of them was impacted to a moderate or greater severity level.  20 C.F.R. pt. 404, subpt. P, app. 1, § 14.10A(1).  Furthermore, Plaintiff does not specify which two or more of the relevant constitutional markers (fatigue, fever, malaise and involuntary weight loss) he allegedly has at a "severe" level.  Although Plaintiff's 100-pound weight loss undoubtedly meets this requirement, he merely claims that he "experience[s] fatigue and malaise," without elaborating in any way as to their supposed severity.[4]  (Pl.'s Br., ECF No. 16, at 11).

___

[4]  There is no question that Plaintiff repeatedly complained to his medical providers about fatigue and malaise.  (R. 360, 367, 374, 462, 464, 490, 501, 509, 524, 577, 584, 590, 602, 609, 767, 838, 881, 886).  However, the record generally reflects that these symptoms were not severe.  For example, when asked about being "[a]lways tired/fatigue[d]," Plaintiff responded, "no."  (R. 575, 580; *see also* R. 426 (denying fatigue outright), 559 (reporting "some weakness and fatigue").  *But see* R. 374 (checking a box on a form indicating that he had "[f]atigue, profound and impairs daily function")).  Plaintiff's providers also suggested at times that his fatigue could be managed by pacing himself when carrying out activities. (*See* R. 459, 470, 496, 509).

The record indicates that Plaintiff consistently denied the existence of the remaining

15

Turning to the listing's subsection "B" criteria, which Plaintiff also does not address, it is doubtful that the handful of references in the record to his Sjogren's syndrome, some of which merely acknowledge the diagnosis, constitute "repeated manifestations" of the condition. (R. 865, 869, 913, 914, 917). In addition, as just stated, Plaintiff fails to identify a second severe constitutional symptom or sign beyond his involuntary weight loss. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.10B (also requiring "at least two" of these to establish the subsection "B" criteria). Lastly, he does not show a marked level of limitation in ADLs, social functioning or timely completing tasks because of deficiencies in concentration, persistence, or pace. *Id.* pt. 404, subpt. P, app. 1, § 14.10B(1)-(3); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F(2)(d) (defining "[m]arked limitation" as one in which the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited"). As the ALJ noted, despite his diagnoses Plaintiff's ADLs included cooking, cleaning, laundry, shopping and childcare. (R. 19 (citing Ex. 10F/1-2); *see also* R. 241-44 (Adult Function Report additionally listing ADLs of, *inter alia*, caring for and walking dogs, attending appointments, personal care, and washing dishes)). He also socialized in person and online with family and (for at least a significant period after the alleged disability onset) friends, (R. 242-44), and Drs. Coleman, Williams and Schiller all determined that he had only mild limitations in interacting with others. (R. 58, 67, 810-11). And as for any limitations in completing tasks due to problems with concentration, persistence or pace, Dr. Coleman determined that he had none and Drs. Williams and Schiller concluded that they were only mild. (R. 58, 67, 811).

For these reasons, the Court denies Plaintiff's first claim.

---

constitutional marker, fever. (R. 319, 322, 374, 426, 532, 534, 543, 551, 559, 573, 575, 584, 604, 609, 611, 767, 851, 856, 899).

###### 2.      Fibromyalgia

Because fibromyalgia is not an impairment listed in Appendix 1, at step three the ALJ must instead determine whether it medically equals a listing, such as Listing 14.09D for inflammatory arthritis.[5] SSR 12-2p.  Listing 14.09 may be equaled in four ways.  First, there must be persistent inflammation or deformity of: (1) a major lower extremity joint plus: (a) a documented medical need for a mobility aid (such as a walker); or (b) an inability to use an upper extremity to independently initiate, sustain and complete work-related activities involving fine and gross movements as well as a documented medical need for a hand-held assistive or seated mobility device involving the use of the other hand; or (2) a major upper extremity joint plus a medically documented inability to use either upper extremity to carry out such activities. 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09A(1)-(2).  Second, a claimant must have inflammation or deformity in an upper or lower extremity joint involving at least two organs/body systems with: (1) one involved at a moderate or greater severity level; and (2) two or more of the severe constitutional symptoms or signs noted in the prior subsection.  *Id.* pt. 404, subpt. P, app. 1, § 14.10B.  Third, the claimant must have spondylitis or other spondyloarthropathies resulting in ankylosis (fixation or immobility) of the spine measured at a minimum of 30 degrees of flexion from a vertical (zero degrees) position.  *Id.* pt. 404, subpt. P, app. 1, § 14.10C.  Fourth, the listing may be equaled through "[r]epeated manifestations" of inflammatory arthritis, at least two of the constitutional symptoms or signs, and marked limitations in: (1) ADLs; (2) maintaining social functioning; or (3) timely completing tasks because of deficiencies in concentration, persistence, or pace.  *Id.* pt. 404, subpt. P, app. 1, § 14.10B(1)-(3).

---

[5] Disability may also be established at step three if the claimant's fibromyalgia, in combination with one or more other medically determinable impairments, equals a listing, *see* SSR 12-2p, but here Plaintiff argues that the ALJ should have considered whether his fibromyalgia alone met or equaled Listing 14.09. (Pl.'s Br., ECF No. 16, at 12).

Plaintiff's "argument" in support of this claim consists of a single bald assertion: "It is also submitted that the ALJ should have considered whether the Claimant's fibromyalgia met or equaled a listing at 14.09 D." (Pl.'s Br., ECF No. 16, at 12 (citing SSR 12-2p)). That is it. Accordingly, this Court could easily find that the claim has been waived. *See McGuirk v. O'Malley*, No. 23-1192, 2024 WL 3470848, at *6 n.2 (W.D. Pa. July 18, 2024) ("The Court finds Plaintiff's argument on this point difficult to follow as it is very conclusory and Plaintiff provides no citations to the record. Thus, this argument is likely waived . . . ."); *Hyer v. Colvin*, No. 15-297-GMS, 2016 WL 5719683, at *11 (D. Del. Sept. 29, 2016) ("It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts.") (quoting *Ve Thi Nguyen v. Colvin*, No. C13-882, 2014 WL 1871054, at *2 (W.D. Wash. May 8, 2014)).

Nonetheless, in light of the sentence's placement at the end of Plaintiff's (albeit limited) argument in support of his Sjogren's syndrome claim, and giving him the benefit of the doubt, this Court treats that argument as lodged on behalf of his fibromyalgia claim as well. As such, however, Plaintiff's fibromyalgia claim suffers from the same defects, i.e., a lack of any attempt whatsoever to cite relevant evidence and explain how it fulfills the criteria of the relevant listing. (*See* Pl.'s Br., ECF No. 16, at 11-12; *see supra* § V.A.1). But even if Plaintiff had engaged with the listing criteria, a brief review of each of the four ways in which the inflammatory arthritis listing may be established shows that his claim is inadequate.

First, assuming Plaintiff could show persistent inflammation in a major lower extremity joint (such as his knees (*see, e.g.*, R. 523, 539, 547, 553)), the record documents no medical need for any of the assistive devices mentioned in subsection "A.1" of Listing 14.09. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09A(1) (requiring, *inter alia*, a medical need for a walker, bilateral

canes/crutches, seated mobility device, or hand-held assistive device).  Dr. Monfared noted upon physical examination that Plaintiff required no such mobility aids, (R. 820), and Plaintiff himself only claimed to need, at most, a single cane when walking on uneven ground and a wrist brace. (R. 246, 264).  Further, the record lacks evidence that Plaintiff could not use one or both of his arms to perform work-related activities.  20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09A(1)(b)-(2). Second, it remains unclear which two organs/body systems are allegedly involved with any major joint inflammation, let alone how either is "severely" involved, and as determined above, (*see supra* n.4), the record does not establish that Plaintiff's fatigue or malaise was severe.  20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09B.  Third, although Plaintiff was diagnosed with lumbar and cervical spondylitis, (R. 394, 422, 426-27, 450-51), it was described as only "mild-to-moderate."  (R. 394, 450).  Along these lines, the Court could locate no references in the record to "ankylosis," and in fact Dr. Monfared confirmed that Plaintiff's range of motion in his lumbar and cervical spine was within normal limits.  (R. 833).  Fourth, as noted with Plaintiff's Sjogren's syndrome, he cannot meet the full set of "repeated manifestations" criteria because of his lack of severe fatigue, fever or malaise (notwithstanding his severe involuntary weight loss) and because he was not "markedly" limited in ADLs, social functioning, or timely completing tasks due to deficiencies in his concentration, persistence, or pace.  (R. 58, 67, 241-44, 810-11); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09D.

For the foregoing reasons, the Court denies Plaintiff's first two claims.

**B.      Medium Work RFC**

**1.      The Parties' Positions**

After setting forth the applicable background law including the definition of "medium work," Plaintiff submits that the ALJ's determination that he could work at a medium exertional level is unsupported by substantial evidence because it ignores the "overwhelming evidence" of

his pain and discomfort, weakness, and ambulation and memory problems in favor of a few more positive but cherrypicked treatment notes. (Pl.'s Br., ECF No. 16, at 12-13 (citing *Sykes*, 228 F.3d 259; *Chitwood v. Brown*, 788 F.2d 1376 (8th Cir. 1986); *Bapp v. Bowen*, 802 F.2d 601 (2d Cir. 1986))). He posits that this evidence indicates that his symptoms were consistent with his diagnoses despite the ALJ's contrary findings and that the ALJ merely substituted his own lay opinion in place of what the evidence actually shows. (*Id.* at 13 (citing *McEaney v. Comm'r of Soc. Sec.*, 536 F. Supp. 2d 252 (N.D.N.Y. 2008); *Boulton v. Astrue*, No. 5:07CV88-J, 2008 WL 474410 (W.D. Ky. 2008))). He cites several cases for the propositions that pain and weakness are non-exertional impairments that must be considered by the ALJ, that subjective complaints of pain must be accorded great weight if backed by the evidence and only discounted if refuted by it, and that they may support a claim for disability. (*Id.* at 14 (citing *Nguyen v. Chater*, 172 F.3d 31 (1st Cir. 1999); *Smith v. Calvano*, 637 F.2d 968, 972 (3d Cir. 1981); *Taybron v. Harris*, 667 F.3d 412, 415 n.6 (3d Cir. 1981); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1981) (additional citations omitted))). He adds that his lengthy employment history (having worked for 36 years) and the fact that he lost his job due to the inability to keep pace counsel in favor of awarding him benefits and, moreover, that his age at the time of alleged disability onset (50) places a greater burden on the Commissioner when denying them. (*Id.* (citing *Dikeman v. Halter*, 245 F.3d 1182, 1184, 1188 (10th Cir. 2001); *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990))).

The Commissioner counters that the ALJ's medium work RFC determination was consistent with the regulations and supported by substantial evidence. (Resp., ECF No. 19, at 9 (citing 42 U.S.C. § 423(d)(1)(A), (d)(2)(A); 20 C.F.R. §§ 404.1512(a), 404.1545(a)(1), 404.1546(c); SSR 96-8p) (additional citation omitted)). He observes that Plaintiff again fails to identify any specific evidence warranting greater limitations or that the ALJ did not consider and

20

instead offers only broad and unsupported generalities regarding the decision's supposed defects. (*Id.*). Reminding the Court that it is not the ALJ's burden to explain why Plaintiff did not require further restrictions, he asserts that the ALJ fulfilled his duty to make findings based on the record evidence when he acknowledged Plaintiff's alleged difficulties but pointed out his repeatedly benign examination results, lack of more aggressive treatment, and substantial ADLs, which collectively furnished a reasonable basis to discount his subjective complaints. (*Id.* at 9-10 (citing R. 19-20) (additional citations omitted)). The Commissioner continues that the ALJ also considered Drs. Williams's and Schiller's findings on both initial review and reconsideration that Plaintiff did not have any severe mental impairments or work-related restrictions, as well as Dr. Coleman's consultative opinion that he had a moderate limitation in his ability to respond appropriately to usual work situations and changes in work routines but only mild or no limitations in all other areas of mental functioning. (*Id.* (citing R. 20-21, 810-11)). Turning to the opinions on Plaintiff's physical functioning, the Commissioner emphasizes that although Dr. Henderson concluded on initial review that Plaintiff was limited to light work, Dr. Hubbard upon reconsideration and Dr. Monfared in his consultative opinion determined that Plaintiff had no exertional restrictions. (*Id.* at 10-11 (citing R. 59-62, 68-69, 825-30)). The Commissioner maintains that in the face of these opinions ranging from no exertional limitations to a restriction to light work (but none suggesting Plaintiff could not work at all), the ALJ reasonably resolved the conflicting evidence in finding that Plaintiff could work at the medium exertional level. (*Id.* at 11 (citation omitted)).

Next, the Commissioner refutes Plaintiff's claims that the ALJ ignored his symptoms such as pain, weakness and memory problems, stressing that the ALJ in fact credited many of them and limited his RFC accordingly but adding that the ALJ also retained great discretion having reviewed the record and conducted the hearing to evaluate Plaintiff's subjective

complaints.  (*Id.* (citing R. 19-20; *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *Burke v. Comm'r of Soc. Sec.*, 317 F. App'x 240, 244 (3d Cir. 2009); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))).  He argues that a reasonable mind considering the record could find several grounds for concluding that Plaintiff's complaints were not fully corroborated.  (*Id.* at 12).  Additionally, he points out that Plaintiff failed to identify the purportedly "overwhelming evidence" ignored by the ALJ and contrasts this deficiency with the ALJ's repeated citations to the record in support of his findings.  (*Id.*).  Noting that the ALJ need not refer to each piece of evidence, and that the fact that he did not do so does not mean he failed to consider the entire record, the Commissioner submits that the Court should accept the ALJ's representation that he considered all the evidence.  (*Id.* (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))).  He maintains that, reading the decision as a whole, the ALJ easily fulfilled the reasonable articulation requirement by setting forth his logic in crafting Plaintiff's RFC and asserts that Plaintiff's contrary contentions amount to nothing more than an improper request for the Court to usurp the ALJ's role and reweigh the evidence to formulate a new RFC.  (*Id.* at 12-13 (citing *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021); *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 302 (2015); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))).

> **2.    Analysis**

RFC is "the most a [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1).  To determine the RFC, the ALJ must base the assessment on "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3); *Fargnoli*, 247 F.3d at 41.  That evidence includes medical records, observations made during formal medical examinations,

descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *Id.*  The ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981).

Moreover, under Social Security Ruling 16-3p, the ALJ must follow a two-step process in evaluating the Plaintiff's subjective symptoms specifically: (1) determine if there is an underlying medically determinable physical or mental impairment, shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the Plaintiff's pain or symptoms; then (2) evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's functioning.  SSR 16-3p, 2016 WL 1119029, at *4-8 (Mar. 16, 2016).  In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must consider relevant factors such as the objective medical evidence, evidence from medical sources, treatment course and effectiveness, daily activities, and consistency of Plaintiff's statements with the other evidence of record.  *Id.*

It is within the province of the ALJ to evaluate the credibility of a claimant.  *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).  "Although 'any statements of the individual concerning [his] symptoms must be carefully considered,' the ALJ is not required to credit them."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing SSR 96–7p and 20 C.F.R. § 404.1529(a)).  An ALJ's "findings on the credibility of [a] claimant [] 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'"  *Irelan v. Barnhart*, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citation omitted).  An ALJ may disregard a claimant's subjective complaints when contrary evidence exists in the record.  *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.

1993).  However, the ALJ must provide her reasons for discounting a claimant's testimony. *Burnett*, 220 F.3d at 122; *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

Here, despite Plaintiff's contention that the evidence of his disabling "pain and discomfort, ambulation problems, and weakness," as well as his "memory issues," was "overwhelming," (Pl.'s Br., ECF No. 16, at 13), he fails to cite any such evidence in support of his argument.  It is true that in the "Factual History" section of his brief, he cites a handful of treatment notes reflecting these maladies, such as: (1) a May 2018 note from Colleen Matejicka, D.O., in which he complains about "feel[ing] like the tin man getting up and moving"; (2) another from Dr. Butler in May 2023 recording his complaints of worsening numbness in his arms and wrists; and (3) a third note from Marcelino Oliveri, D.O., in November 2023 noting Plaintiff's limp and complaints of radicular leg pain and upper and lower extremity numbness, paresthesia, and weakness. (*Id.* at 8 (citing R. 590, 849, 920)).  However, these treatment notes, even coupled with Plaintiff's testimony along the same lines, (*see, e.g.*, R. 33, 45-46), hardly constitute "overwhelming" evidence of disability in the face of the contrary evidence relied upon by the ALJ in his decision.

This evidence included, among other records: (1) Dr. Monfared's consultative opinion setting forth Plaintiff's ADLs of housework and childcare, finding full strength in the upper extremities and no sensory deficits or muscle atrophy upon examination, and concluding that Plaintiff could perform medium work; (2) Dr. Hubbard's administrative findings that Plaintiff has no exertional limitations; (3) a September 5, 2023 treatment note from Hany Salama, M.D., recording that Plaintiff had a normal gait and range of motion with no edema or tenderness; (4) MRIs showing only mild to moderate degenerative changes in the cervical and lumbar spine; (5) chiropractic care but a lack of any more aggressive treatment of his disc issues like epidural steroid injections or surgeries; (6) Drs. Williams's and Schiller's administrative findings that he

24

has no severe mental impairments; (7) Dr. Coleman's consultative opinion that he had no or only

mild limitations in all areas of mental functioning (except for one moderate limitation); and (8)

Plaintiff's acknowledgement that his medication causes no side effects. (R. 19-21 (citing Exs.

2A, 4A, 3F/23, 4F, 9F, 10F, 11E/4, 13F/10)). In short, Plaintiff essentially asks this Court to

reweigh the evidence referenced in his brief against that cited by the ALJ in support of his

decision, but such second-guessing is not permissible under applicable case law. *See Chandler*,

667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual

determinations.") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Moreover, Plaintiff is incorrect that the ALJ failed to account for the impairments set

forth above. The ALJ considered Plaintiff's allegations surrounding them,[6] (*see* R. 19 (noting

his claims of, *inter alia*, pain, difficulty lifting and need for a cane and that his conditions

collectively "affected his memory")), but determined that their purported "intensity, persistence

and limiting effects" were not fully consistent with the medical evidence, (*id.*), as detailed in the

---

[6] Plaintiff appears to cite *Sykes*, *Chitwood* and *Bapp* for the proposition that an ALJ must "acknowledge the Claimant's non-exertional limitations," (*see* Pl.'s Br., ECF No. 16, at 13), although his omission of any pinpoint citations or explanatory parentheticals leaves the Court unable to assure itself of the precise point he wishes to make in invoking these cases. Further obscuring his intentions is the fact that the shared legal tenet set forth in all three does not apply here, where the ALJ did not rely on the Medical Vocational Guidelines to determine disability and, furthermore, took testimony from a VE. *See Sykes*, 228 F.3d at 266 ("when the claimant has exertional and nonexertional impairments[,] . . . courts . . . require the testimony of a vocational expert or other similar evidence," not just resort to the guidelines); *Chitwood*, 788 F.2d at 1388 ("Where a claimant suffers from a nonexertional impairment, such as pain, that significantly limits his or her ability to perform the full range of work contemplated by the Guidelines, the ALJ may not rely on the Guidelines to satisfy the Secretary's burden of proof, but must instead produce vocational testimony."); *Bapp*, 802 F.3d at 603 ("[W]hen a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."). In any event, to the extent that these cases stand for the premise seemingly proffered by Plaintiff, they are distinguishable because in this case the ALJ considered Plaintiff's nonexertional impairments. (R. 19).

prior paragraph. Additionally, although Plaintiff correctly points out that subjectively reported non-exertional impairments like pain may support a claim for disability, particularly where corroborating medical evidence exists, (*see id.* at 14 (citations omitted)), it remains "well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled." *Andreolli v. Comm'r of Soc. Sec.*, No. 07-1632, 2008 WL 5210682, at *4 (W.D. Pa. Dec. 11, 2008) (citing *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986)). Here, as explained by the ALJ, other substantial evidence existed apart from Plaintiff's testimony that his pain was not as severe and/or limiting as alleged.[7] (R. 19 (citations omitted); *see also* Pl.'s Br., ECF No. 16, at 14 (acknowledging that an ALJ may discount a claimant's subjective complaints of pain if contrary evidence exists) (citing *Smith*, 637 F.2d at 972)).

Finally, Plaintiff suggests that his employment history and age each warrant awarding benefits. (Pl.'s Br., ECF No. 16, at 14 (citations omitted)). The Court easily disposes of this first proposition, for which Plaintiff cites no authority,[8] because "[t]he law is well-established that the ALJ's failure to afford [a claimant] heightened credibility based solely on [his or] her work

---

[7] Because the ALJ's RFC determination was backed by substantial evidence, Plaintiff's two out-of-circuit district court cases cited on page 13 of his brief are distinguishable. (Pl.'s Br., ECF No. 16, at 13 (citing *McEaney*, 536 F. Supp. 2d 252; *Boulton*, 2008 WL 474410)). First, the ALJ was not required to perform a "function-by-function" assessment of every physical and mental ability listed in 20 C.F.R. § 404.1545(b)-(d), as set forth in *McEaney*. *See Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("Contrary to Plaintiff's assertion otherwise, the United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases). Second, in *Boulton*, "no medical source opinion" supported the ALJ determination that Plaintiff could perform medium work. 2008 WL 474410, at *4. In this case, by contrast, two of the three medical sources to evaluate Plaintiff's physical capabilities concluded that he had no exertional limitations at all (with a third limiting him to light work). (R. 59-62, 68-69, 825-30).

[8] Relatedly, Plaintiff identifies no legal support for the notion that it is significant that he lost his last job due to an alleged inability to keep pace. Furthermore, the Court observes that the three opinions in the record to assess his mental functioning all set forth no or only mild limitations in this area. (R. 58, 67, 811).

history does not amount to an error requiring remand." *Shore v. Kijakazi*, No. 20-1169-SRF, 2022 WL 782701, at *10 (D. Del. Mar. 15, 2022) (citations omitted); *see also Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (finding that "the ALJ's credibility determination . . . based on a broad view of the record . . . would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered [the claimant's] employment history."). *Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004) ("[T]he ALJ did not err by failing to afford Corley heightened credibility based solely on his work history.").

In purported support of his attendant contention regarding his age, Plaintiff cites *Dikeman* and *Terry*, which both observed: "As age is one of the factors that must be considered, it should surprise no one that the [Commissioner] faces a more stringent burden when denying disability benefits to older claimants." *Dikeman*, 245 F.3d at 1184 (quoting *Terry*, 903 F.2d at 1275) (alteration in *Dikeman*). Specifically, if, as here, the claimant "is 'closely approaching advanced age (50–54), [the Commissioner] will consider that [his] age, along with a severe impairment and limited work experience, may seriously affect [his] ability to adjust to a significant number of jobs in the national economy.'" *Id.* (citing 20 C.F.R. § 404.1563(c)) (some alterations added). However, based on Plaintiff's own arguments, his work experience is anything but "limited." (*See* Pl.'s Br., ECF No. 16, at 14 (highlighting 36-year employment history)). Moreover, in both *Dikeman* and *Terry*, the ALJ determined that the claimant could not perform her past relevant work, triggering application of the Medical Vocational Guidelines or "grid rules." *Dikeman*, 245 F.3d at 1184; *Terry*, 903 F.3d at 1275; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, Grid Rule 200.00(a) ("The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity *and the individual's impairment(s) prevents the*

27

*performance of his or her vocationally relevant past work*.") (emphasis added); *see also Lesh v. Saul*, No. 1:19-cv-01416-RDM-GBC, 2020 WL 5500186, at *5 (M.D. Pa. Sept. 9, 2020) (noting that an inability to perform past relevant work "could trigger the grid rules due to [the claimant's] borderline age category").  Here, by contrast, the ALJ determined that Plaintiff could perform his past relevant work as a packaging supervisor, production supervisor, plant manager and supervisor of motorcycle assembly, and thus the need to consider the grid rules and the impact of Plaintiff's age under them never arose.  (R. 21 (citing *Dictionary of Occupational Titles* 806.131-014)); *see* 20 C.F.R. § 404.1520(f) (if the ALJ determines at step four that the claimant can perform past relevant work, he or she "will find [the claimant] not disabled" and proceed no further in the sequential analysis).

For these reasons, the Court denies Plaintiff's third claim as well.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's Request for Review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

28